ANTONIO DEL SIGNORE *vs.* THOMPSON-STARRETT COMPANY.

Suffolk.   March 13, 1908. — April 3, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

The declaration in an action of tort for personal injuries suffered by the plaintiff while in the defendant's employ was in three counts, one being at common law and alleging that the plaintiff was injured upon an elevator used by the defendant in the construction of an eleven story building and allowed by the defendant to be in an unsafe condition, and the second and third being under R. L. c. 106, § 71, cl. 1, 2, respectively, alleging a defect in the ways, works and machinery used by the defendant, and negligent superintendence. At the trial the evidence tended to show that the plaintiff, while standing on the top of an elevator for the purposes of greasing the runways as the elevator ascended, was injured because there was no indication to the engineer of how far the elevator had proceeded, and therefore it ran higher than it should have and crushed the plaintiff against the machinery at the top of the well, that the elevator was a temporary appliance and had not before been run above the third floor of the building, that the cable which raised and lowered the elevator ran upon a drum at the engine on the first floor, that temporary tags were put on the cables of other temporary elevators on the same work by the defendant's engineer for his own convenience, to show him, as the cable ran upon the drum, when the various floors were reached by the elevator car, but that none were on the cable of this elevator, that, although a system of bells for signalling was used by the defendant on other elevators, there was no signalling apparatus on the elevator where the plaintiff was injured from which the engineer could be told by the plaintiff when the elevator car had gone high enough to be stopped, and that the plaintiff knew of this lack before he started on the elevator, but made no arrangements with the engineer as to how the latter should be told when

to stop the elevator.  *Held,* that the risk was an obvious one which the plaintiff must be deemed to have assumed, and that there was no evidence that the plaintiff's injury was caused by negligence for which the defendant was responsible.

TORT for personal injuries received by the plaintiff while in the employ of the defendant and while greasing the runways of a temporary elevator in use in the construction of an eleven story building.  Writ in the Superior Court for the county of Suffolk dated July 16, 1904.

There was a trial before *Stevens,* J.  Besides the facts stated in the opinion, the evidence introduced by the plaintiff tended to show that the elevator was run by a cable which ran from a drum on a stationary engine on the first floor of the building along that floor to the bottom of the elevator well, thence up the side of the well to the top, whence it was fastened to the top of the elevator car.  The marks or tags mentioned in the opinion had been put on the cables of other temporary elevators used on the same work, and were on the cables where they ran upon the drums at the engines, and indicated when the car had reached the various floors.  Other facts are stated in the opinion.

At the close of the evidence, the presiding judge directed a verdict for the defendant, and the plaintiff excepted.

*J. A. McGeough,* (*J. A. Collins* with him,) for the plaintiff.

*W. H. Hitchcock,* (*L. C. Doyle* with him,) for the defendant.

MORTON, J.  The plaintiff was injured by being caught and crushed between the cross beam on top of an elevator and the machinery at the top of the elevator well.  The elevator was a temporary one for use in the construction of the building, although the well in which it was placed was permanent.  The declaration contained three counts, — one at common law alleging that the elevator was negligently suffered by the defendant to be in an unsafe condition, and the other two under the statute, — one alleging a defect in the ways, works and machinery and the other negligence on the part of a superintendent.  At the close of the evidence, the presiding judge ruled that the plaintiff was not entitled to recover on either count, and directed a verdict for the defendant.  The case is here on exceptions by the plaintiff to this ruling and direction.

The defects complained of are that the rope by which the elevator was raised and lowered had no tags or marks upon it to indicate

to the engineer where the elevator was as it ascended or descended, and that there was no appliance by which those on the elevator could signal to the engineer above the third or fourth floor.

The marks or tags did not constitute a part of the elevator or of the machinery by which it was operated, but were temporary in their nature, and were put on for his own convenience with the assistance of others by the engineer who ran the engine by which the elevator was raised and lowered, and the want of them could not be said, therefore, to be a defect in the ways, works and machinery, or to constitute an unsafe or defective condition for which the defendant was liable, or to be evidence of negligence on the part of the superintendent.

In regard to the absence of a signalling appliance, it is to be noted that the elevator had been finished in the forenoon of the day of the accident, and that this was its first trip to the top floor. The plaintiff testified that, "to have the elevator work properly," it was necessary that the slides or grooves in which it ran should be greased, and that he and another man were sent up to do this. It was the first time that the plaintiff had done such work on an elevator, but he was familiar with elevators used in the construction of buildings. He knew that there was no method of signalling from the top floor to the engineer, and, as he testified, he told the engineer "to go up slowly and stop at the top floor." The man who was with him also told the engineer the same in substance,—"not to go up too fast and not to go up too high." The plaintiff's account of how the accident happened was that "he (the engineer) went up and kept going until I got hold of the cable, the gear and the cable, and that was the last of it." The engineer could not see the elevator above the second floor, and no arrangement was made with him by the plaintiff and his companion as to how they would notify him when they got to the top floor, and the accident would seem to have been due in part at least to the failure of the plaintiff and his companion to make such an arrangement. But, however that may be, we think that the risk was an obvious one and that the plaintiff must be deemed to have assumed it. We see no more evidence of negligence on the part of the defendant on this branch of the case than on the other.

*Exceptions overruled.*